UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
CASE NO.

7:16-cv-21-D

| | |
|---|---|
| CALVIN TYRONE NORTON, *Plaintiff*, v. KEVIN TABRON, in his personal capacity and his official capacity as S.B.I. Agent for NC Department of Public Safety; BRENNAN REGNER, in his personal capacity and his official capacity as S.B.I. Agent for NC Department of Public Safety; JONATHAN DAVID) aka JON DAVID, in his personal capacity and his official capacity as District Attorney for the 13th Prosecutorial District of North Carolina; DANIEL THURSTON, in his personal capacity and his official capacity as Assistant District Attorney for the 13th Prosecutorial District of North Carolina; LEWIS HATCHER, in his personal capacity and his official capacity as Sheriff of Columbus County, North Carolina; ROBBIE SELLERS, in his personal capacity and his official capacity as Lieutenant of Columbus Detention Center; JEFFREY ROSIER, in his personal capacity and his official capacity as Chief of Police of the Whiteville Police Department; AARON HERRING in his personal capacity and his official capacity as Sergeant Detective for the Criminal Division of the Whiteville Police Department; STEVEN STRICKLAND, in his capacity and his official capacity as Police Officer of the Whiteville Police Department; *Defendants*, | CIVIL COMPLAINT<br><br>JURY TRIAL DEMANDED |

Plaintiff Calvin Tyrone Norton (pro se) complaining of the Defendants state as follows:

**JURISDICTION AND PARTIES**

1.  All Defendants reside in the federal Eastern District of North Carolina, laying proper venue

here *per 28 U.S.C. § 1391(a)(1)* and conferring jurisdiction over Defendants' persons.

2. Plaintiff sues Defendants' under *42 U.S.C. § 1983* for violation of his Fourth Amendment right to be free from unreasonable seizure, false arrest under color of state law, for violation of his Fifth Amendment right for protection against self-incrimination, and for the violation of his Fourteenth Amendment rights, privileges, and equal protection of laws conferring subject matter jurisdiction upon any United States District Court and pendent state law jurisdiction *per 28 U.S.C. § 1367*.

3. That otherwise this court has jurisdiction over the plaintiff's asserted claims already establish in Judge Boyle's previous order file 7:14-cv-00260-BO and U.S. Fourth Circuit Appeals Judgment No: 15-1383.

4. Plaintiff Calvin Tyrone Norton ("Norton") is a resident, citizen, and domiciliary of the Eastern District of North Carolina.

5. Defendant Kevin Tabron is a resident, citizen, and domiciliary of the Eastern District of North Carolina and is currently serving as a S.B.I. Special Agent for the Coastal Division of Onslow County, North Carolina acting as an agent to the North Carolina Department of Public Safety, otherwise is not immune for the claims asserted in this Complaint, or have waived any immunity they may have through his conduct as alleged herein through coverage by liability insurance.

6. Defendant Brennan Regner is a resident, citizen, and domiciliary of the Eastern District of North Carolina and is currently serving as a S.B.I. Special Agent for the Coastal Division of Onslow County, North Carolina acting as an agent to the North Carolina Department of Public Safety, otherwise is not immune for the claims asserted in this Complaint, or have waived any immunity they may have through his conduct as alleged herein through coverage by liability insurance.

7. Defendant Jonathan David is a resident, citizen, and domiciliary of the Eastern District of North Carolina and is currently the duly elected District Attorney for the 13th Prosecutorial District of North Carolina *pursuant to Article IV, § 18 of the North Carolina Constitution, N.C.G.S. Article 9 § 7A,* which includes within its jurisdiction the County of Columbus (the "District Attorney") acting as an agent to

the State of North Carolina, and paid by the state otherwise is not immune for the claims asserted in this Complaint, or have waived any immunity they may have through his conduct as alleged herein through coverage by liability insurance.

8. Defendant Daniel Thurston is a resident, citizen, and domiciliary of the Eastern District of North Carolina and is currently an assistant District Attorney for the 13th Prosecutorial District of North Carolina *pursuant to Article 9, § 7A-63,* which includes within its jurisdiction the County of Columbus (the " Assistant District Attorney") acting as an agent to the State of North Carolina, employed by District Attorney's office and reports to and is supervised by the " "District Attorney" , paid as a state employee otherwise is not immune for the claims asserted in this Complaint, or have waived any immunity they may have through his conduct as alleged herein through coverage by liability insurance.

9. Defendant Lewis Hatcher is a resident, citizen, and domiciliary of the Eastern District of North Carolina and is currently the duly elected Sheriff for Columbus County p*ursuant to N.C.G.S. § 162-1. , Article VII, § 2 of the North Carolina Constitution* (the "Sheriff") having authority to hire, appoint, the care and custody of the jail or his employees see./ *N.C.G.S. § 162-20.* acting as an agent to the county of Columbus, paid by the county of Columbus and is covered by liability insurance covering the events and omissions herein, therefore has waived sovereign and governmental immunity through the purchase of liability insurance *pursuant to N.C.G.S. § 162-8., N.C.G.S. § 162-12., N.C.G.S. § 162-15.* with regard to these claims.

10. Upon information and belief, Defendant Robbie Sellers is a resident, citizen, and domiciliary of the Eastern District of North Carolina and is currently the Lieutenant of the Columbus County Detention Center employed by the Sheriff, paid by the County of Columbus, acting as an agent having custody and care over the jail approved by the Sheriff *pursuant to N.C.G.S. § 162-20.,* and reports to and is supervised by the Sheriff otherwise is not immune for the claims asserted in this Complaint, or have waived any immunity they may have through his conduct as alleged herein through coverage by liability insurance *see/ Art. 32 § 58-32.*

11. Defendant Jeffrey Rosier is a resident, citizen, and domiciliary of the Eastern District of North Carolina and is currently serving as the Chief of Police of the City of Whiteville acting under the umbrella of the city of Whiteville as an agent, paid by the City of Whiteville otherwise is not immune for the claims asserted in this Complaint, or have waived any immunity they may have through his conduct as alleged herein through coverage by liability insurance.

12. Defendant Aaron Herring is a resident, citizen, and domiciliary of the Eastern District of North Carolina and is currently serving as the Sergeant of the Detective Criminal Division of Police of the City of Whiteville, employed and paid by the City of Whiteville and reports to and is supervised by the Police Chief, acting under the umbrella of the city of Whiteville as an agent, otherwise is not immune for the claims asserted in this Complaint, or have waived any immunity they may have through his conduct as alleged herein through coverage by liability insurance.

13. Upon information and belief, Defendant Steven Strickland is currently a sworn Police Officer of the Whiteville Police Department employed and paid by the City of Whiteville and reports to and is supervised by the Police Chief acting under the umbrella of the city of Whiteville as an agent otherwise is not immune for the claims asserted in this Complaint, or have waived any immunity they may have through his conduct as alleged herein through coverage by liability insurance.

## FACTUAL ALLEGATIONS

14. Upon information and belief, with further discovery and the additional testimonies of witnesses an incident investigation report fraud to estate was done with and by the Whiteville Police Department on December 5, 2013 assigned to Sergeant Detective Tedd Dixon.

15. The report named the Plaintiff as a suspect.

16. The allegations on the report were in fact a false report.

17. That plaintiff never held a public figure office.

18. That a private forensic was hired who found the last testament will was forged, but nevertheless he could not say who signed the will or any other documents.

19. The private forensic never formed an opinion that the plaintiff ever signed the questioned document or any other documents alleged in the criminal case sought against plaintiff.

20. Defendants at all times relevant never brought Norton in to do an original handwriting analyst to compare his signatures to any documents in question.

21. Defendants at all times relevant never called Norton in for questioning of the investigation or a statement the same prior to the warrants issued for an arrest of the matter.

22. Upon information and belief the testimony of Sergeant Detective Tedd Dixon will further prove the private forensic examiner through cross examination did not know who signed the documents if he opined Carlos did not.

23. Nevertheless, upon information and belief Detective Ted Dixon wrote supplement notes in the case file to that affect that was favorable to plaintiff's innocence.

24. Tedd Dixon further wrote that he went to our District Attorney Jon David's Office with the evidence, three (3) assistant district attorneys Fred Gore, Chris Gentry, and Karen or Kaylin who in prosecutorial discretion, stated there was not enough evidence to charge Norton.

25. Upon information and belief or otherwise the testimony of Tedd Dixon that the Defendant Chief Jeffrey Rosier eagerly thereafter nagged Detective Tedd Dixon to charge plaintiff, as regards to pending lawsuit against Rosier(Exhibit 2 see/ *Norton v. Jeffrey Rosier 4th Cir. No: 15-1383, 7:14-cv-00260-BO)*.

26. Upon information and belief, the State doesn't have their own handwriting experts anymore.

27. That the prosecutors were not the investigators in this matter.

28. Upon information and belief Defendant Chief Jeffrey Rosier he or he elected another to do so contacted Jon David's Office again after Tedd Dixon refused to charge plaintiff.

29. On or about October 17, 2014 Defendant Jon David sent out a detail email to Special Agent Mack Warner with numerous inflammatory allegations contained therein complaints of the plaintiff and he asked the S.B.I. to investigate plaintiff to see if there is a case to prosecute (Exhibit 1).

30. Upon information and belief, Defendants Special Agent Kevin Tabron and Special Agent

Brennan Regner started the investigation and took a statement from a notary who affirmed the execution of the will and other legal documents.

31. The notary Tamekia Ford Bellamy -codefendant is currently a certified officer of the State of North Carolina and was at the time documents were sealed.(Exhibit 2)

32. Mrs. Ford's statement certified the legal validity of those documents in question were properly done.(Exhibit 3)

33. Upon information and belief, thereafter on April 20, 2014 defendants Special Agent Kevin Tabron and Special Agent Brennan Regner intentionally and maliciously obtained six (6) infamous felony warrants against the Norton. (Exhibit 4)  - 4/3

34. That there was no material evidence, forensic or witnesses' testimony to meet the elements of those offenses proving plaintiff the suspect to the crimes beyond a reasonable doubt.

35. Norton denied the allegations throughout the process and he pleads not guilty to all charges.

36. Upon information and belief, or review of discovery, on April 22, 2015 the Defendants Sergeant Detective Aaron Herring, Officer Steven Strickland, and another unknown police officer of the Whiteville Police Department followed plaintiff to his job and placed him under arrest.

37. Norton questioned the officers of their reasons and what the arrest is about or the unjustifiable and unlawful force.

38. Defendants Steven Strickland and another unknown city police officer placed plaintiff in patrol vehicle and asked plaintiff custodial interrogation questions.

39. Defendants of the Whiteville Police department jointly failed to warned the Miranda Rights required pursuant to N.C.G.S. 15A-401 (c) (1).*(see/ US Supreme Miranda v. Arizona for judicial review)*

40. Defendants had no real justification or legitimate purpose for the use of force.

41. Defendants' at the Whiteville Police Department did not obtain those warrants against Norton.

42. The defendants Jeffrey Rosier, Aaron Herring, and Steven Strickland acted as the perpetrators to

intentionally harm this plaintiff.

43. Up until this point, Defendants of the Whiteville Police Department had no lawful or justified reason to stop Norton, neither had warrants in their custody and control at the time of arrest.

44. Defendants of the Whiteville Police Department took plaintiff to the Columbus County Detention Center controlled by the defendants Lewis Hatcher and Robbie Sellers before a judicial magistrate and at that time served him with the warrants obtained by the S.B.I.

45. Either Defendants Special Agent Kevin Tabron or Special Agent Brennan Regner was not present during the arrest of plaintiff, nor at the detention center.

46. Plaintiff until this day has never seen neither Special Bureau Investigators who initially obtained those warrants.

47. While waiting at the jail, Detective Aaron Herring questioned plaintiff of how he blast him on his radio show during his candidacy race for Columbus County Sheriff prior to the jailers taking custody of plaintiff.

48. At that point Defendant's Miranda rights still yet was not warned.

49. Upon information and belief defendants Lewis Hatcher and Robbie Sellers were inside the jail and Robbie having plaintiff process search down method.

50. Defendants' had a duty to acquire whether these warrants were valid prior to confinement or should have if they claimed otherwise.

51. Defendant Robbie Sellers placed an orange jumpsuit on plaintiff and demanded him to take Mobil patrol photos ran by the Columbus County Detention Center through social media and internet outlets to create a mug shot.

52. Shortly thereafter Defendant Robbie Sellers further confined Norton behind steel doors without the plaintiff's will until bonded out.

53. Upon information and belief, after Plaintiff's release Detective Tedd Dixon of the Whiteville Police Department on April 22, 2015 met with the Plaintiff and gave over an hour testimony that

several of these defendants framed him with those charges because he had no evidence to bring charges.

54. Upon information and belief Detective Tedd Dixon met with the Plaintiff again on April 24, 2015 and revealed that his chief Defendant Jeffrey Rosier was involved and how the investigation was unfair.

55. Upon information and belief, plaintiff hired a private handwriting expert to examine the same documents; she opined the signatures were in fact a genuine of Carlos Sutton. (Exhibit 5)

56. All Defendants acted out of bad faith of victimization towards Norton.

57. The allegations and charges were not true against Norton.

58. The six felonies were dismissed by District Attorney Jon David's Office on December 15, 2105.(Exhibit 6) 6 B

59. **COUNT I: VIOLATION OF FOURTH AMENDMENT RIGHT TO BE FREE FROM UNREASONABLE SEIZURE**--The facts as pleaded above show that Plaintiff is entitled *per 42 U.S.C. § 1983* to actual and punitive damages from the defendants Jeffrey Rosier, Aaron Herring, Steven Strickland of the Whiteville Police Department, committing misconduct while employed and for their actions under their custom and policies that caused harm to this plaintiff, for unreasonably seizing Plaintiff, involuntary confinement under color of state law acting as perpetrators, false arrest/false imprisonment plaintiff knowingly that they did not obtained the warrants themselves, further for improper purposes lacking probable cause to do so, if not inevitably, illegally use excessive force, together with court costs and any reasonable attorney's fee per *42 U.S.C. § 1988*.

60. The facts as pleaded above show that Plaintiff is entitled per 42 U.S.C. § 1983 to actual and punitive damages from the all other defendants, while employed on duty for their actions under their custom and policies that caused harm to this plaintiff, for unreasonably seizing Plaintiff, involuntary confinement under color of state law acting as perpetrators, false arrest/false imprisonment plaintiff knowingly that they did not obtained the warrants themselves, further for improper purposes lacking

probable cause to do so, if not inevitably, illegally use excessive force, together with court costs and any reasonable attorney's fee *per 42 U.S.C. § 1988.*

61. The defendants' deprived Norton of rights of liberty without due process, privileges and immunities secured by the Fifth and Fourteenth Amendments to the United States Constitution, and under the Civil Rights Act of 1871, 42 U.S.C. § 1983.

62. That the defendants' actions were malicious, corrupt, and intentionally carried out for improper purposes.

63. The defendants' acts were excessive, unnecessary and not justified under the circumstances.

64. **COUNT II: VIOLATION OF FIFTH AMENDMENT RIGHT TO PROTECTION AGAINST SELF -INCRIMINATION and DUE PROCESS** - The facts as pleaded above show that Plaintiff is entitled *per 42 U.S.C. § 1983* to actual damages from the defendants Steven Strickland, Aaron Herring, and Jeffrey Rosier and ALL other defendants' while employed for their actions under their custom and policies that caused harm to this plaintiff for their failure to honor these safe guards herein the Miranda Rights, took Norton into custody, without his consent, lack probable cause, knowingly that an actual waiver had not occurred and thereby deprived him of his due process constitution rights and a right to an attorney while acting willfully as perpetrators under the color of law statue, with an ulterior motive other than the right, if not individually, together with court costs and any reasonable attorney's fee per *42 U.S.C. § 1988.*

65. That all of the defendants' actions were malicious, corrupt, and intentionally carried out for improper purposes.

66. The all of defendants' acts were excessive, unnecessary and not justified under the circumstances.

67. **COUNT III: VIOLATION OF FOURTEENTH AMENDMENT RIGHT TO PRIVELEGES OR IMMUNITIES CLAUSE, DUE PROCESS, AND EQUAL PROTECTION OF LAWS-** The facts as pleaded above show that Plaintiff is entitled *per 42 U.S.C. § 1983* to actual

damages from each defendants while employed and for their actions under their custom and policies that caused harm to this plaintiff and for failure to properly investigate the matter and their abuse of the legal process without lawful justification and thereby deprived Norton of rights to liberty lacking probable cause, privileges and immunities secured by the Fifth and Fourteenth Amendments to the United States Constitution, and by Article 1, Section 19 of the North Carolina Constitution knowing that there were insufficient evidence to prosecute prior to obtaining arrest warrants and failed to protect plaintiff equally under the provisions of our constitution in America together with court costs and any reasonable attorney's fee per *42 U.S.C. § 1988*.

68. That the defendants' actions were malicious, corrupt, and intentionally carried out for improper purposes.

69. The defendants' acts to false arrest plaintiff were excessive, unnecessary and not justified under the circumstances.

70. **COUNT IV: COMMON LAW FELONY- FALSE IMPRISONMENT/FALSE ARREST—** The facts as pleaded above show that all Defendants deprived Norton of his liberty using unlawful restraint and detained him without consent, without his will or legal justification entitling Plaintiff to actual and punitive damages from Defendants.

71. The facts plead above show that the plaintiff is entitled to nominal damages from the defendants' while employed and for their actions under their custom and policies that caused harm to this plaintiff as well as compensation for mental suffering, including fright, shame, and mortification from the indignity and disgrace, consequent upon an illegal detention.

72. The facts plead above show plaintiff is entitled compensatory damages from the defendants' for physical suffering, mental suffering and humiliation, loss of time and interruption of business, reasonable and necessary expenses occurred, and injury to his reputation.

73. That the defendants' actions were committed by both words or acts out of malicious, corrupt, and intentionally carried out for improper purposes.

74. Whether the defendants' acted on what another said or did the defendants' acts were excessive, unnecessary and not justified under the circumstances.

75. The defendants' knew that there was no sufficient reason to arrest plaintiff.

76. The prosecutors dismissed all six felony charges for insufficient evidence. ( Exhibit 7)

77. **COUNT V: MALICIOUS PROSECUTION-**The facts as pleaded above show that Defendants initiated the earlier proceeding with the Whiteville Police Department whom taken the evidence to the District Attorney's Office of the 13th Prosecutorial Division as the least three assistant district attorneys for Jon David decline charges based on insufficient evidence, nevertheless, the defendants' did so maliciously and without merit and probable cause or reasonable grounds to support the original evidence, and that the earlier proceeding terminated in plaintiff's favor.

78. That there was no evidence offered to show that plaintiff committed a crime and further no evidence given to meet the elements of the offenses against Norton.

79. That the defendant's initiated or continued the initial a criminal case with an improper purpose and abused the legal process acting out of bad faith and victimization towards the plaintiff.

80. That these defendants' took an active role in initiating or encouraging another during the criminal investigation against Norton.

81. The Defendants' caused plaintiff unnecessary legal fees using false evidence to get 6 indictments while the plaintiff was next door in District court probable cause hearing on June 3, 2014.

82. The prosecution was out of victimization towards plaintiff because he was a former candidate for sheriff and he exposed these same defendants' misconduct prior too or during the time of the criminal investigation.

83. That plaintiff is entitled recover money damages for certain suffered having to defend the false allegations and the methods these defendants took while employed and for their actions under their custom and policies that caused harm to this plaintiff to single him out.

84. **COUNT VI: PROSECUTORIAL MISCONDUCT- BRADY V. MARYLAND (1963)-** The

facts as pleaded above show that all Defendants' willfully, maliciously, violated Brady v. Maryland knowing the US Supreme Court has held that the prosecution has a constitutional accountability and duty to turn over to the defense evidence that tends to show the defendant is not guilty or deserves a lesser punishment.

85. Defendants' Jonathan David and Daniel Thurston certified on August 25, 2015 that all evidence was turned over.

86. However the Defendants' did not turn over the initial police report of Whiteville Police Department involving the plaintiff.

87. Defendants' tampered with the evidence and removed, altered, or destroyed reliable evidence belonging to Detective Tedd Dixon files as such any conversations audio, written, or by all other means with witnesses even the forensic retired S.B.I. When he could not say the plaintiff was the criminal.

88. The police report was a reliable material that all defendants acted on.

89. The evidence was material an issue at trial of the matter.

90. Defendant's withheld additional supplement notes of Detective Tedd Dixon favorable to the plaintiff either exculpatory or useful in impeaching the State's evidence.

91. Defendants' suppressed evidence favorable to plaintiff accused upon the request and violated the due process where the evidence is either by material to guilt or to punishment, irrespective of good or bad faith of the prosecution.

92. That the defendants violated the professional rules and ABA Model Rules 3.4., 3.8, and 8.4 which prohibit lawyers from disobeying obligations, obstructing evidence, and failing to comply with discovery, as well as make timely disclosure to all information.

93. That the plaintiff is entitled to recover sanctions from each defendant's for reasonable expenses caused by the failure, including attorney's fees while employed and for their actions under their custom and policies that caused harm to this plaintiff.

94. **COUNT VII: NORTH CAROLINA COMMON LAW DEFAMATION – SLANDER-**

**SLANDER PER SE-** The facts as pleaded above show that Defendants' willfully, maliciously, accused the plaintiff of serious, notorious, or immoral inflammatory felonies without sufficient evidence beyond reasonable doubt.

95. The Defendants' slandered the plaintiff by word of mouth through social media and other news outlets among billions of viewers and has exposed plaintiff to ridicule.

96. The statements made by the defendants were negligently or intentionally communicated to third parties.

97. That the false statements were communicated in the news media viewable to millions and in the News Reporter, News Channel 6 website, News Channel 3 web sites, Google, chrome, face book, twitter as a result of the defendants' malicious behaviors towards the plaintiff.

98. That the Defendants' allegations were in fact false and not supported by evidence.

99. The communication used by these defendants' reflected negatively on the plaintiff's character, morality, or his integrity.

100. The statement made by the defendants tends to hold plaintiff up to scorn, hatred, ridicule, disgrace, or contempt, in the mind of any considerable and respectable segment of the communities.

101. That the plaintiff is entitled to recover damages from the defendants' for any injuries that he incurred as a result of the defamatory statements, lost earnings and lost earnings capacity suffered as a result of the defendants' statements.

102. The plaintiff is also entitled to recover from the defendants' while employed and for their actions under their custom and policies that caused harm to this plaintiff pain and sufferings, impairment to reputation and standing in the community, personal humiliation, shame, and disgrace.

103. **COUNT VIII: NORTH CAROLINA COMMON LAW DEFAMATION LIBEL-** The facts as pleaded above show that Defendants' willfully, maliciously, accused the plaintiff of serious, notorious, or immoral inflammatory felonies without sufficient evidence beyond reasonable doubt.

104. That the false statements were published in the news media viewable to millions and in the

News Reporter, News Channel 6 website, News Channel 3 web sites, Google, chrome, face book, twitter as a result of the defendants' malicious behaviors towards the plaintiff.

105. The defendants' knew the statements were false and defamatory, or they acted with reckless disregard of the truth or falsity of the statement in making the statements, or acted negligently in failing to ascertain whether the statements were true or false before making it.

106. The statement made by the defendants tends to hold plaintiff up to scorn, hatred, ridicule, disgrace, or contempt, in the mind of any considerable and respectable segment of the communities.

107. That the plaintiff is entitled to recover damages from the defendants' for any injuries that he incurred as a result of the defamatory statements, lost earnings and lost earnings capacity suffered as a result of the defendants' statements.

108. The plaintiff is also entitled to recover the defendants' over pain and sufferings, impairment to reputation and standing in the community, personal humiliation, shame, and disgrace from each of the defendants'.

109. **COUNT VIIII INFLICTING EMOTIONAL DISTRESS-** The facts as pleaded above show that Defendants' willfully, maliciously, accused the plaintiff of serious, notorious, or immoral inflammatory felonies without sufficient evidence beyond reasonable doubt.

110. The defendants' conduct exceeds all bounds of decency tolerated by society and the conduct caused mental distress of a very serious kind to this plaintiff.

111. The defendants' showed extreme and outrageous conduct which was intended and did cause severe emotional distress to the plaintiff.

112. The defendants' actions were indicated a reckless indifference to the likelihood that has caused severe emotional distress to this plaintiff.

113. The plaintiff is entitled to recover from the defendants' while employed and for their actions under their custom and policies that caused harm to this plaintiff and for negligent infliction of emotional distress because the defendants' negligently engaged in conduct, it was reasonably

foreseeable that such conduct did in fact cause the plaintiff severe emotional distress without necessarily proving the existence of physical injuries.

114.   In order to deter defendants' from further engaging in like conduct the plaintiff is entitled to recover for further compensation from defendants' for withstanding particularly egregious behaviors, pursuant to section 1D-35 THREE TIMES THE AMOUNT OF ACTUAL DAMAGES.

**WHEREFORE,** Plaintiff prays that this Court enter judgment as pleaded above against the defendants' individual or jointly, and such other and further relief as this Court finds just and lawful.

a.   That the courts find that the defendants acted negligent and are held liable for all the claims asserted whether they claims are that they acted on what another party told them to do or insufficient warrant.

b.   That the courts declare these defendants victimized the plaintiff individually or jointly and lack the probable cause too.

c.   That the defendants' misled judicial magistrate of the courts with either false evidence or misleading evidence in order to obtain the warrants the same the grand jury to get indictments against this plaintiff.

d.   Order all defendants' to issue a public apology to the plaintiff immediately.

e.   That the defendant requests damages to exceed Ten Million Dollars for the injuries theses defendants' caused him.

f.   This court enters a judgment on any other findings and facts deem necessary and proper as the court see.

TRIAL BY JURY IS DEMANDED FOR ALL ISSUES SO TRIABLE.

Respectfully submitted,

/s/ *[signature]*  2-2-2016
Calvin Tyrone Norton
PO Box 1145
Whiteville NC 28472
Phone 910 840 1352
Email nortoncalvin@yahoo.com